[Civ. No. 1122. Fourth Appellate District.—June 8, 1935.]

SWEETWATER FRUIT COMPANY OF CALIFORNIA, INC. (a Corporation), Appellant, v. THE SWEETWATER WATER CORPORATION (a Corporation), Respondent.

Robert B. Burch for Appellant.

Bacigalupi, Elkus & Salinger, Philip Storer Thacher and Lester J. Penry for Respondent.

MARKS, J.—This is an action to quiet title to seventeen and one-half miner's inches of water once pumped from the sands of the Sweetwater River and used for domestic and irrigation purposes by plaintiff. It bases its claim upon adverse possession and use during the years 1898 to 1904, inclusive. The trial court found that the use had taken place but that it was not adverse but with the permission and consent of defendant.

Plaintiff contends that the findings of fact are not supported by and are contrary to the evidence. As particular grounds for reversal it urges that the following findings have no evidentiary support: (1) The use of water claimed by plaintiff was open, peaceable, uninterrupted, notorious and with the knowledge, consent and permission of the defendant. (2) The use of the water by plaintiff was not adverse but on the contrary the pumping by the plaintiff relieved defendant from the necessity of supplying plaintiff's lands with water at a time when its reservoir was nearly empty and the water

supply inadequaté to supply its service area, and the use of such waters by the plaintiff was permitted and welcomed by defendant. (3) All the water rights of the Sweetwater River within the Rancho de la Nacion, since June 9, 1869, were and are owned by the defendant's predecessors in interest and the defendant. (4) It is, however, impossible, from the evidence presented to determine the quantity of water so pumped and used by plaintiff.

The properties now owned by the respective parties have seen numerous changes in ownership during the years covered by the evidence in this action. We will not concern ourselves with these changes but will generally refer to the properties of plaintiff as though it had been the sole owner of them and will deal with the properties of defendant in the same manner.

Defendant is a public utility supplying water to its consumers from a reservoir formed by a dam on the Sweetwater River. Its water rights date back to the title of its predecessor in interest acquired in 1869. Plaintiff owns land devoted to citricultural purposes. This land was furnished with water by defendant from its reservoir prior to 1898 and after 1904. The intervening years were a period of drought and sufficient water was not available to furnish the requirements of defendant's consumers. Plaintiff installed pumps in the bed of the Sweetwater River and pumped water onto its lands and there used it. After 1904 the pumping was discontinued and plaintiff again obtained its water from defendant. During the pumping period the land on which the pumping was done belonged to defendant. It later was acquired by plaintiff. This deed reserved to defendant all subterranean waters under the land, the right to drill wells to tap these waters and the right to convey the waters from the places where they were pumped to other lands.

The evidence on the nature of the rights exercised by plaintiff in pumping and using the water during the years here in question is very sketchy. From it the trial court was justified in drawing the conclusion that defendant was glad to have any of its consumers, including plaintiff, pump water from its lands and thus save their trees and crops as defendant could not furnish them with water from its customary source of supply; that the pumping was done with the tacit if not the express consent of defendant and that the use by plaintiff and the other farmers was neither adverse nor hostile to the rights of defendant.

It is of interest to note that as soon as nature had replenished defendant's water supply so that it could furnish its consumers with water from its reservoir, plaintiff discontinued pumping, obtained its water supply from defendant and did not assert any claim of title to water in the river sand until this action was filed, almost twenty-nine years after its pumping operations had ended. It is also important to note that in 1913 plaintiff purchased the land from which the water had been pumped and accepted a deed from defendant which reserved to defendant the subterranean waters and the right to drill wells, pump water and remove it from the land. If plaintiff had acquired any right in or title to any of these subterranean waters, or believed it had done so, that was the time to assert its claim. If it believed it had acquired title to any of these waters it is strange that it should have purchased the land and accepted a deed which reserved these same waters to defendant.

█ We are of the opinion that the evidence supports the questioned findings which we have summarized and numbered one and two. As the pumping operations of plaintiff were neither adverse nor hostile to the rights of defendant, its case must fail as it acquired no rights in the water by adverse possession. This makes it unnecessary for us to consider the questioned findings which we have numbered three and four because they become entirely immaterial and may be disregarded. If plaintiff had no interest in the water it is none of its concern if the trial court gave defendant more rights than those to which the evidence and pleadings entitled it. For the same reason plaintiff cannot be injured by the failure of the trial court to find the quantity of water pumped from the river sands with the express or implied consent of defendant.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.